J-S38030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAROL L. SBARBARO-MORTELLITI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEPHEN MORTELLITI, | |
| Appellant | No. 1165 EDA 2014 |

Appeal from the Order Entered March 11, 2014
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 07-9317

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY OLSON, J.:                                **FILED JULY 06, 2016**

Appellant, Stephen Mortelliti ("Husband"), appeals *pro se*[1] from the order entered on March 11, 2014.  We affirm.

The relevant factual background and procedural history of this case is as follows.  On March 28, 1987, Husband married Carol L. Sbarbaro-Mortellitti ("Wife").  Shortly thereafter, Husband set up what the trial court titled the Stephen Mortelliti Profit Sharing Account ("the PSA").  The PSA was a profit-sharing plan as that term is used in the Internal Revenue Code.  **Cf.** 26 C.F.R. § 1.401–1 (discussing profit-sharing plans).  Husband also established a retirement account at Merrill Lynch.

---

[1] Husband is licensed to practice law in this Commonwealth.  During the course of the trial court proceedings, Husband ceased being represented by counsel and began representing himself.

On July 26, 2007, the parties separated. The next day, Wife filed for divorce. In early 2011, the Honorable John L. Braxton, a senior judge of the Court of Common Pleas of Philadelphia County, was specially assigned to preside over the divorce proceedings. On February 7, 2011, a hearing was held on a petition for contempt filed by Wife. In that petition, Wife alleged that Husband violated prior discovery orders.

Husband and his counsel failed to appear for that hearing. Eventually, the trial court contacted Husband and directed him to appear that afternoon so the hearing could continue in his presence. At the conclusion of the morning portion of the hearing, however, at which neither Husband nor his counsel were present, Wife's counsel asked to go off-the-record. That request was granted. Nothing further appears on the record until Husband appeared that afternoon.

On March 18, 2011, Husband filed a motion seeking Judge Braxton's recusal. In that motion, he argued that the off-the-record conversation held on the morning of February 7, 2011 was a prohibited *ex parte* communication. He argued that such *ex parte* communication required Judge Braxton to recuse himself from the instant proceedings. A hearing on Husband's recusal motion was held that same day. At the conclusion of the hearing, the trial court denied Husband's recusal motion.

On September 23, 2011, the trial court bifurcated the divorce proceedings. **See** 23 Pa.C.S.A. § 3323(c.1). On October 18, 2011, the trial

court issued a divorce decree dissolving the matrimonial bond between Husband and Wife. Thereafter, a hearing was held before a special master regarding the equitable distribution of the parties' property. On February 2, 2012, the hearing officer filed a report and recommendation.

Wife filed an appeal of the hearing officer's report and recommendation and requested a *de novo* hearing before the trial court. A multi-day hearing ensued. On March 11, 2014, the trial court issued an amended final order equitably distributing the parties' property. This timely appeal followed.[2]

Husband presents three issues for our review:

1. Whether the [trial c]ourt abused its discretion when it denied Husband's motion for recusal where it engaged in *ex parte* communications with Wife's attorney?

2. Whether the [trial c]ourt abused its discretion with regard to the [PSA] where it (a) valued the asset at $373,434.00 even though the record indicates that its value at the date of separation was only $22,940.00; (b) failed to factor in the joint marital debt owed on the account in the amount of $327,003.00; and (c) included the amount of $22,940.00 which was already included as a marital asset in the Merrill Lynch Profit Sharing Account?

3. Whether the [trial c]ourt abused its discretion where it failed to account for the rental value of the marital home during Wife's exclusive possession of it?

Husband's Brief at 8.

---

[2] On April 17, 2014, the trial court ordered Husband to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On May 6, 2014, Husband filed his concise statement. On July 25, 2014, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in his concise statement.

In his first issue, Husband argues that the trial court erred by not recusing. "We review the trial court's denial of the recusal motion for abuse of discretion." *Becker v. M.S. Reilly, Inc.*, 123 A.3d 776, 778 (Pa. Super. 2015) (citation omitted). "A party seeking recusal bears the burden of producing evidence to establish bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Watkins*, 108 A.3d 692, 734 (Pa. 2014) (citations omitted). When

> considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair[,] and competent.

*Commonwealth. v. Orie Melvin*, 103 A.3d 1, 23 (Pa. Super. 2014) (citation and internal ellipsis omitted).

Husband argues that the trial court engaged in *ex parte* communication with Wife's counsel. He further contends that the *ex parte* communication, when viewed as part of the broader record, evidences bias. Notably, in his statement of questions presented, Husband only argues that the trial court erred in denying his recusal motion because of the *ex parte* communication. *See* Husband's Brief at 8. Thus, although we may view the record as a whole, including the trial court's statements made in open court,

- 4 -

when determining if the trial court exhibited bias in light of the alleged *ex parte* communication, *see Commonwealth v. Stivala*, 645 A.2d 257, 264 (Pa. Super. 1994), *appeal denied*, 655 A.2d 513 (Pa. 1994), we may not reverse the trial court's decision if no *ex parte* communication took place. *See* Pa.R.A.P. 2116(a).

We conclude that the trial court did not engage in prohibited *ex parte* communications with Wife's counsel. Throughout the pendency of this case, the Code of Judicial Conduct provided that:

> Judges should accord to all persons who are legally interested in a proceeding, or their lawyers, full right to be heard according to law, and, except as authorized by law, must not consider **ex parte communications concerning a pending proceeding.**

Pennsylvania Code of Judicial Conduct, Canon 3A.(4) (West 2012) (emphasis added).[3] In this case, the trial court stated that the off-the-record conversation with Wife's counsel did not concern the pending proceeding. N.T., 3/18/11, at 10. Husband presented no evidence at the recusal hearing to suggest that the off-the-record conversation between the trial court and Wife's counsel concerned the merits of this case. As no prohibited *ex parte* communication occurred, we ascertain no abuse of discretion in the trial court's denial of the recusal motion.

---

[3] In 2014, the former Code of Judicial Conduct was repealed and a new Code of Judicial Conduct was promulgated. **See** 44 Pa.B. 455 (Jan. 25, 2014). As the notice of appeal in this case was filed prior to the new Code of Judicial Conduct's effective date, all citations are to the former Code of Judicial Conduct.

- 5 -

In his second issue, Husband argues that the trial court erred in its calculation of the PSA's value. First, Husband argues that the evidence established the PSA's value was $22,940.00. Second, Husband argues that the trial court ignored the fact that the PSA was encumbered by a significant amount of debt. Finally, he argues that a portion of the PSA was already included in the marital estate as part of another asset. "Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Morgante v. Morgante*, 119 A.3d 382, 386 (Pa. Super. 2015) (citation omitted).

> As this Court has explained:
>
> The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property.

*Childress v. Bogosian*, 12 A.3d 448, 456 (Pa. Super. 2011) (internal alterations, quotations marks, and citations omitted).

Husband first argues that the trial court erred by finding that the PSA was worth $373,434.00. To the extent that Husband challenges the gross valuation of the PSA, this argument is waived because the argument section

- 6 -

of Husband's brief contains no development of this claim. **See** Pa.R.A.P. 2119(a).

Next, Husband argues that the net value of the PSA was $22,940.00. He argues that the difference – approximately $350,000 – was debt that he and Wife owed to the PSA. In essence, Husband argues that the trial court erred by not including the approximately $350,000.00 in loans taken from the PSA as marital debt. Generally, debts accrued prior to separation are marital debts; however, a debt accrued prior to separation may be a non-marital debt where the other spouse did not take part in incurring the debt and received no benefit therefrom. **See Harasym v. Harasym**, 614 A.2d 742, 746 (Pa. Super. 1992).

We conclude that the record supports the trial court's finding that the debt owed to the PSA was non-marital debt. At trial, Wife produced bank records for the PSA along with the PSA balance sheets. These documents showed that there was less than $100.00 in the PSA bank account at the time of separation. Husband testified that he and Wife took approximately $350,000.00 in loans from the PSA. N.T., 3/18/11, at 36. On the other hand, the administrator of the PSA testified that he was unaware of any loans taken from the PSA. N.T., 4/26/12, at 111. Wife testified that she never authorized or approved any loans taken from the PSA and that she never received any benefit from such loans. **Id.** at 151. Furthermore, Husband failed to produce any written promissory notes. The trial court

credited Wife's testimony, together with the lack of promissory notes, over Husband's testimony. "Credibility determinations are for the trier of fact. As long as sufficient evidence exists in the record to support the credibility findings, this Court may not overturn those findings." *In re Merlo*, 58 A.3d 1, 16 (Pa. 2012) (citation omitted). As sufficient evidence exists to support the trial court's credibility determinations, the trial court did not abuse its discretion in finding that the PSA loans were non-marital debt.

Next, Husband argues that $22,940.00 in the PSA was double counted. Specifically, he argues that the value of the PSA included the $22,940.00 in the Merrill Lynch account. At the equitable distribution hearing, Husband testified that the Merrill Lynch account balance was included in the value of the PSA. There was no testimony or evidence to the contrary. In essence, the trial court found Husband's testimony not credible and determined that the Merrill Lynch account balance was not included in the value of the PSA.

It is well-settled that a trial "judge may reject . . . uncontradicted testimony where, for any reason[], its credibility is doubtful." *V-Tech Servs., Inc. v. St.*, 72 A.3d 270, 280 (Pa. Super. 2013). In this case, the trial court explained its rationale for finding that Husband's testimony lacked trustworthiness, *i.e.*, Husband was unable to produce any documentary evidence that showed the Merrill Lynch account balance was included in the PSA's balance. As such, we ascertain no abuse of discretion in the trial

court's decision to count the Merrill Lynch account separately from the PSA account.

In his final issue, Husband argues that the trial court erred in not granting him a credit for the time Wife was the sole occupant of the marital residence. For a period of over four years after separation, Wife had sole use and enjoyment of the marital residence. Husband argues that he is entitled to a credit equal to one-half of the rental value of the property over that time period. Wife, on the other hand, argues that Husband was not entitled to such a credit because of repair expenses for the marital residence that she incurred.

> As this Court has explained:
>
> [T]he general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property[; however,] the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. . . . [W]hether the rental credit is due and the amount thereof is within the sound discretion of the [trial court.]

*Lee v. Lee*, 978 A.2d 380, 385-386 (Pa. Super. 2009) (citation omitted).

In this case, the trial court "found that any credit owed to [Husband] was offset by [Wife's] maintenance of the marital residence during her occupancy and [Wife's] extensive efforts to prepare the marital residence for sale absent the assistance of [Husband]." Trial Court Opinion, 7/25/14, at 17. This finding is supported by the record. Wife testified regarding the substantial work she undertook after Husband departed from the marital

residence.  N.T., 6/21/12, at 33-34.  As such, the trial court did not abuse its discretion in failing to grant Husband a credit for one-half of the rental value of the marital residence for the time he was dispossessed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2016